UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DWAYNE EDMUND WILSON,

                    Plaintiff,                         Case No. 1:22-cv-875

v.                                                     Hon. Hala Y. Jarbou

UNKNOWN OLSON, et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss

any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept

Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v.*

*Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

complaint for failure to state a claim against Defendants Olson, Carter, Garrod, Hardenburg,

Rewerts, Nemi, Blair, Nemiec, and Fleisher. The Court will also dismiss, for failure to state a

claim, the following claims against remaining Defendant Allen: (1) Plaintiff's Eighth Amendment

conditions of confinement claims; (2) Plaintiff's Fourteenth Amendment due process claims;

(3) Plaintiff's civil conspiracy claim; and (4) Plaintiff's claims concerning violations of MDOC policy. Plaintiff's First Amendment retaliation claims against Defendant Allen remain in the case.

<u>**Discussion**</u>

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Warden Randee Rewerts, Deputy Warden Unknown Nemi, Prison Rape Elimination Act (PREA) Coordinator J. Nemiec, Resident Unit Managers Unknown Blair and S. Fleisher, Prison Counselor and Assistant Resident Unit Manager Unknown Allen, Sergeant Unknown Garrod, and Officers Unknown Olson, Unknown Carter, and Unknown Hardenburg.

Plaintiff alleges that on July 27, 2021, he filed a PREA complaint against Officer Wentworth (not a party). (ECF No. 1, PageID.4.) He contends that because of that complaint, he faced more retaliation from staff. (*Id.*) Plaintiff states that Defendant Allen issued him a misconduct ticket for threatening behavior even though Plaintiff was "nowhere near him." (*Id.*) Plaintiff avers that prior to issuance of the ticket, Defendant Allen kept placing inmates who smoked K2 in his cell, and that the smoke aggravated his asthma and lung disease. (*Id.*) Plaintiff had to "go over" Defendant Allen's head to Defendant Nemi about the issue. (*Id.*) He avers that Defendant Allen got upset because Plaintiff went to Defendant Nemi and because Defendant Nemi made Defendant Allen move Plaintiff to another area. (*Id.*) Defendant Allen called Plaintiff a "f***en cry baby." (*Id.*)

Plaintiff avers that he also had to go to Defendant Nemi again when Defendant Allen refused to fix Plaintiff's "screen sheet" so that he could be transferred to a Level II facility from

Level IV. (*Id.*) Defendant Nemi told Plaintiff to "give [him] two more months [with] no tickets and stay working," and he would send Plaintiff to Level II. (*Id.*) At that time, Plaintiff was "16 months ticket free and was working with a good work record." (*Id.*) He contends that Defendant Allen got upset and told Plaintiff that he "bet [Plaintiff would not] make Level 2 unless he [said] so." (*Id.*)

After those incidents, Defendant Allen issued the threatening misconduct ticket. (*Id.*) Moreover, on August 6, 2021, yard privileges were taken away from Plaintiff's unit. (*Id.*) Plaintiff contends that he was sitting on his bed when Defendant Allen came to his cell door and started "going crazy." (*Id.*, PageID.5.) Defendant Allen directed Plaintiff to "get on the f***ing floor." (*Id.*) Plaintiff turned around, and Defendant Allen opened the cell door and cuffed Plaintiff. (*Id.*) Another officer came and took Plaintiff to segregation. (*Id.*) On the way to segregation, Plaintiff kept asking what he did wrong and got no response. (*Id.*) Plaintiff subsequently got the threatening behavior ticket, which stated that Plaintiff threatened to kill Defendant Allen. (*Id.*) Plaintiff avers that Defendants Garrod, Olson, Carter, and Hardenburg falsely stated that Plaintiff had made the threat. (*Id.*, PageID.5, 12.) Plaintiff alleges that the ticket was Defendant Allen's way to stop him from going to a Level II facility and that it was "clear retaliation." (*Id.*)

Plaintiff contends that Defendant Olson was supposed to pack his property while he was in segregation. (*Id.*, PageID.6.) He avers that Defendant Olson instead violated MDOC policy by not conducting an inventory of his items and instead took Plaintiff's food and gave it away. (*Id.*) Defendant Olson tried to say that Plaintiff's cellmate stole it, but Plaintiff states that he kept his locker locked, meaning that only staff could get to his property. (*Id.*)

Plaintiff goes on to allege that he was placed in the shower in segregation and left there for three days. (*Id.*) He had to sleep on a cold cement floor and a bench. (*Id.*) Plaintiff fell off the

3

bench and hurt his back. (*Id.*) Defendant Blair then placed Plaintiff in a "little cell" in a "little room to sleep on the floor again." (*Id.*) Plaintiff contends that it was so cold because of the air conditioning "blasting." (*Id.*) He was in pain from having to sit and lie on the cold cement. (*Id.*, PageID.7.) Plaintiff contends that he could not sleep because of his pain and the cold. (*Id.*) He had neither a blanket nor a mattress to punish him for protesting the allegedly false misconduct ticket. Plaintiff contends that Defendant Fleisher tried to downplay what happened, and that there was an open cell and mattress available during this time. (*Id.*) According to Plaintiff, staff tried to use COVID-19 as the reason for why he was placed in the shower and the "freezer room." (*Id.*, PageID.11.) He asserts, however, that this was pretextual because no one was wearing personal protective equipment at that time. (*Id.*)

Plaintiff goes on to state that an unnamed lieutenant (not a party) tried to get Plaintiff to drop his grievance and complaint. (*Id.*, PageID.8.) When Plaintiff refused to do so, she told Plaintiff she would charge his cellmate with stealing his property. (*Id.*) Plaintiff responded that his cellmate had not stolen anything, and that the lieutenant was trying to put the blame on him "to let the officer off the hook." (*Id.*)

Plaintiff alleges that when he was released from segregation, he "sat in [his] cell for 60 days" on loss of privileges (LOP) status. (*Id.*, PageID.10.) He was then transferred to the St. Louis Correctional Facility (SLF), which he refers to as the worst prison in Michigan. (*Id.*) Plaintiff contends that this transfer was retaliatory and that Defendant Allen "knew what he was doing" by sending Plaintiff there. (*Id.*) He asserts that SLF is full of nothing but gangs that like to go after older prisoners like him. (*Id.*)

Based on the foregoing, Plaintiff asserts First Amendment retaliation claims, a civil conspiracy claim, and violations of MDOC policy. (*Id.*, PageID.12.) The Court also construes

Plaintiff's complaint to assert claims regarding the handling of his PREA complaint, Eighth Amendment conditions of confinement claims, and Fourteenth Amendment due process claims. As relief, Plaintiff seeks the following: (1) all relevant video footage; (2) damages of $1 million from each Defendant; and (3) for each Defendant to take a polygraph to show that they made false statements and reports. (*Id.*, PageID.13.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Claims Against Defendants Rewerts, Nemi, and Nemiec

Plaintiff has named Rewerts, Nemi, and Nemiec as Defendants, but fails to even name Rewerts and Nemiec in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Because Plaintiff's claims fall far

6

short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendants Rewerts and Nemiec.

Further, it appears that Plaintiff has named these individuals as Defendants because of their respective positions as Warden, Deputy Warden, and PREA Coordinator at DRF. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts showing that Defendants Rewerts, Nemi, and Nemiec encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about any conduct engaged in by Defendants Rewerts and Nemiec. With respect to Defendant Nemi, Plaintiff alleges that Defendant Nemi directed Defendant Allen to move Plaintiff to another area to avoid K2 smoke and that he told Plaintiff he would send Plaintiff to a Level II facility if he remained misconduct-ticket free and stayed working for two more months. (ECF No. 1, PageID.4.) Such allegations fall far short of showing any unconstitutional conduct on the part of Defendant Nemi. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Rewerts, Nemi, and Nemiec were personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against Defendants Rewerts, Nemi, and Nemiec are premised on nothing more than respondeat superior liability, he fails to state a claim against them.

Moreover, to the extent Plaintiff is attempting to assert a claim against Defendant Nemiec related to his handling of Plaintiff's PREA complaint, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460,

467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Nor was Plaintiff's right to petition the government violated by Defendant Nemiec's handling of his PREA complaint. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendant Nemiec's actions have not barred Plaintiff from seeking a remedy for his claims. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff's PREA complaint had been improperly handled and denied, his right of access to the courts to petition for

redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the PREA grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

To the extent Plaintiff contends that Defendant Nemiec failed to comply with PREA guidelines, he cannot maintain such a claim. Plaintiff "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate." (quoting *Amaker v. Fischer*, No. 10-cv-977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is

10

predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not.").

In sum, Plaintiff fails to set forth a cognizable constitutional claim against Defendants Rewerts, Nemi, and Nemiec. The Court, therefore, will dismiss those individuals as Defendants.

### B.    First Amendment Retaliation Claims

Plaintiff suggests that Defendant Allen retaliated against him for filing a PREA complaint against Officer Wentworth. He also suggests that Defendant Allen retaliated against him after he went above Defendant Allen's head to Defendant Nemi to complain about the K2 smokers being placed in his cell. Plaintiff avers that Defendant Allen retaliated by issuing a misconduct ticket for threatening behavior and by transferring him to SLF, which Plaintiff refers to as the worst prison in Michigan. Finally, Plaintiff vaguely suggests that Defendant Olson's act of giving away his property "was clear retaliation." (ECF No. 1, PageID.10.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's filing of a PREA complaint certainly qualifies as protected conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Likewise, while it is unclear whether he went over Defendant Allen's head to

11

Defendant Nemi regarding the K2 smokers in a written grievance or an oral complaint, an inmate has a right to file non-frivolous grievances against prison officials, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). Plaintiff, therefore, has sufficiently alleged that he engaged in protected conduct for purposes of the first prong of a retaliation claim.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

### 1.   Defendant Allen

The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[ ] an adverse action"); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."). Thus, Plaintiff has sufficiently

alleged that Defendant Allen took adverse action by issuing the misconduct ticket for threatening behavior.

Plaintiff also contends that Defendant Allen had him transferred to SLF in retaliation for Plaintiff's protected conduct. Generally, transfers to the general population of another prison are not typically adverse actions. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). A transfer, however, may rise to the level of adverse action if it resulted in some other negative consequence, such as an increase in security level. *See King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005). Here, Plaintiff contends that his transfer to SLF resulted in an increase in his security level from Level II to Level IV. The Court, therefore, concludes that he has sufficiently alleged that his transfer amounted to adverse action.

Moreover, Plaintiff alleges that when Defendant Allen found out that he had filed a PREA complaint against Officer Wentworth, he "came after" Plaintiff by issuing the false misconduct. (ECF No. 1, PageID.4–5.) Plaintiff avers that prior to the issuance of the misconduct, Defendant Allen refused to fix his "screen sheet" so that Plaintiff could be classified at Level II, and that Defendant Allen told Plaintiff that he would not "make . . . [Level II] unless he [said] so." (*Id.*, PageID.4.) He suggests that Defendant Allen wrote the false misconduct solely to block Plaintiff from staying at Level II and to cause him to be transferred to a Level IV facility. While unclear, Plaintiff's complaint suggests that Defendant Allen's adverse actions occurred close in time to his protected conduct. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). Although Plaintiff has by no means proven retaliation, viewing the

allegations in the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has set forth a plausible First Amendment retaliation claim against Defendant Allen.

### 2.    Defendant Olson

As noted above, Plaintiff suggests that Defendant Olson's act of taking his property and giving it to other inmates was "clear retaliation." (ECF No. 1, PageID.10.) A cell search may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*, where the search leaves the cell in disarray and results in the confiscation or destruction of materials. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Plaintiff, therefore, has sufficiently alleged that Defendant Olson acted adversely.

However, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Here, Plaintiff merely alleges the ultimate fact of retaliation by Defendant Olson. He has not alleged any facts from which the Court could infer that Defendant Olson was aware of Plaintiff's protected conduct and confiscated his property in retaliation for such conduct. Moreover, the complaint is

wholly devoid of facts from which the Court could infer that Defendant Olson bore some animus toward Plaintiff. Plaintiff, therefore, fails to set forth a First Amendment retaliation claim against Defendant Olson.[1] *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### C.    Eighth Amendment Conditions of Confinement Claims

The Court has construed Plaintiff's complaint to assert Eighth Amendment conditions of confinement claims premised upon Defendant Allen's placement of inmates who smoke K2 in Plaintiff's cell and Plaintiff's placement in the shower and "freezer room" in segregation.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison

---

[1] Plaintiff also vaguely suggests that "they" denied him a mattress and blanket because he chose to challenge the misconduct ticket. (ECF No. 1, PageID.7.) Even if the temporary denial of a mattress and blanket constitutes adverse action, Plaintiff fails to allege facts suggesting that any of the named Defendants were personally involved in the denial. "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011))).

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

16

### 1.    Cellmates

As noted above, Plaintiff avers that Defendant Allen kept placing inmates who smoked K2 in Plaintiff's cell, and that the smoke aggravated his asthma and lung disease. (ECF No. 1, PageID.4.) Plaintiff contends that he had to go over Defendant Allen's head to Defendant Nemi, and that Defendant Nemi made Defendant Allen move Plaintiff to another cell. (*Id.*)

While exposure to K2 smoke certainly would qualify as a substantial risk of serious harm, particularly to an inmate like Plaintiff who suffers from asthma and lung disease, Plaintiff has failed to allege any facts from which the Court could infer that Defendant Allen was actually aware of the risk of harm to Plaintiff. Nothing in the complaint suggests that Defendant Allen knew (1) that Plaintiff suffered from lung conditions and (2) that the other inmates he assigned as Plaintiff's cellmates used K2. Plaintiff's conclusory allegations simply fail to show that Defendant Allen was actually aware of and disregarded a risk of harm to Plaintiff's health. *See Farmer*, 511 U.S. at 837, 842. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Allen premised upon the placement of K2 smokers in Plaintiff's cell.

### 2.    Placement in the Shower and "Freezer Room"

Plaintiff also contends that his Eighth Amendment rights were violated when he was placed in the shower in segregation for three days and when Defendant Blair moved him to a holding cell that Plaintiff calls the "freezer room." (ECF No. 1, PageID.6–7.) He avers that Defendant Fleisher tried to "downplay" the conditions therein. (*Id.*, PageID.7.) Plaintiff claims that while in the shower, he had to sleep on the cold cement floor and bench, and that he fell off the bench and injured his back. (*Id.*, PageID.6.) Plaintiff had to sleep on the floor in the "freezer room," where the air conditioning was "blasting." (*Id.*) "They" did not give him a mattress or a blanket. (*Id.*, PageID.7.) Plaintiff states he was left in that room "for days." (*Id.*, PageID.9.) He was unable to sleep well because of the cold. (*Id.*, PageID.7.)

As an initial matter, Plaintiff alleges that "they had [him] put in the shower" in segregation. (*Id.*, PageID.6.) Again, Plaintiff fails to allege facts from which the Court could infer that any of the named Defendants were personally involved in his placement in the shower. "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for" the conditions of which Plaintiff complaints. *Boxill*, 935 F.3d at 518 (6th Cir. 2019) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Heyne*, 655 F.3d at 564)). Plaintiff's allegations regarding his placement in the shower are vague and conclusory and simply fail to state a claim against any of the individuals named in his complaint.

Moreover, while unpleasant, Plaintiff's temporary lack of a mattress fails to state an Eighth Amendment claim. Plaintiff's temporary placement on mattress restriction fails to state an Eighth Amendment claim. "The level of discomfort and injury one might expect a prisoner to suffer by virtue of sleeping without a mattress for a few days simply cannot support a claim that the prisoner has been denied 'the minimal civilized measure of life's necessities.'" *Lee v. Wagner*, No. 1:17-cv-474, 2017 WL 2608752, at *4 (W.D. Mich. June 16, 2017) (quoting *Rhodes*, 452 U.S. at 347). Despite variations on: (1) the reason for the restriction; (2) the duration of the restriction; (3) the susceptibility of the prisoner to injury; and (4) the alleged injury, the courts in the Sixth Circuit have routinely rejected Eighth Amendment claims for mattress restrictions.[2] Likewise, the Court

---

[2] *See Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment."); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750 (6th Cir. Feb. 15, 1996) (prisoner denied mattress for two weeks); *Carter v. Hickok*, No. 1:14-cv-1099, 2016 WL 4727427 (W.D. Mich. Sep. 12, 2016) (prisoner was deprived of mattress for four days because of damage to the mattress, prisoner suffered from Multiple Sclerosis, loss of mattress resulted in exacerbation of MS, pain in hips, back, and thighs, anxiety, depression, humiliation and

of Appeals for the Ninth Circuit has concluded that requiring a prisoner to sleep on the floor for a

four-week period without a mattress does not violate the Eighth Amendment. *See Schroeder v.*

*Kaplan*, No. 93-17123, 1995 WL 398878, at \*2 (9th Cir. July 7, 1995). While Plaintiff alleges that

he suffered pain from sleeping on the floor without a mattress, that fact does not rise to the level

of an Eighth Amendment violation. *See Brandon v. Bergh*, No. 2:09-CV-179, 2009 WL 4646954,

at \*3-4 (W.D. Mich. Dec. 8, 2009) (finding that prisoner's claims that he was required to sleep on

a blanket on the floor, which was uncomfortable and caused him to suffer a variety of aches and

pains, prompting him to seek help from health services, failed to show that he suffered any serious

---

discomfort and sleep deprivation); *Peterson v. County of Monroe*, No. 12-cv-11460, 2014 WL
1328205 (E.D. Mich. Mar. 28, 2014) (prisoner deprived of mattress for four days, contended that
he suffered "frostbite" as a result, court concluded undisputed evidence showed only light bruising
and dry skin); *Bean v. Tribley*, No. 2:11-cv-427, 2012 WL 2317580 (W.D. Mich. Jun. 18, 2012)
(prisoner used mattress to facilitate a sexual misconduct violation, mattress removed for seven
days with no substitute, despite documented history of back problems); *Sanders v. Smith*, No. 1:11-
cv-892, 2011 WL 5921246 (W.D. Mich. Nov. 27, 2011) (prisoner deprived of mattress, sheets,
and bed coverings for 38 days following placement on suicide watch and misconduct charge for
destruction of property, even after officials removed plaintiff from suicide watch and he was found
not guilty of property destruction); *Seay v. Prince*, No. 1:10-CV-P59-R, 2010 WL 3340599 (W.D.
Ky. Aug. 20, 2010) (prisoner with "bad back" denied mat and forced to sleep on the floor for two
48-hour periods and one 24-hour period, but court found no Eighth Amendment violation); *Jones
v. Carberry*, No. 2:08-cv-268, 2010 WL 1172562 (W.D. Mich. Mar. 24, 2010) (prisoner deprived
of mattress for 39 days after receiving major misconduct ticket for destroying his mattress, plaintiff
suffered general discomfort and back pain as a result); *Robinson v. McBurney*, No. 2:07-cv-85,
2009 WL 440634 (W.D. Mich. Feb. 23, 2009) (prisoner deprived of mattress in close observation
cell following suicide attempt, deprivation for only one day, mattress was removed under mistaken
belief that it had to be removed for proper suicide watch); *Carter v. Ricumstrict*, No. 07-13311,
2008 WL 4225844, \*2 (E.D. Mich. Sep. 10, 2008) (prisoner deprived of mattress several times for
fixed periods of time because he used it to facilitate sexual misconduct violations, prisoner suffered
from Multiple Sclerosis and loss of mattress caused "aches and pains and constant muscle
spasms"); *Reed v. Rutter*, No. 2:08-cv-200, 2008 WL 4741724 (W.D. Mich. Oct. 24, 2008)
(prisoner used rolled up mattress as a platform to commit sexual misconduct violation, he was
without any mattress or substitute for five days); *Kelly v. Holman*, No. 2:07-cv-206, 2007 WL
5335188 (W.D. Mich. Dec. 14, 2007) (prisoner deprived of mattress for seven days following
misconduct ticket, suffered back problems as a result, *report and recommendation adopted in
relevant part*, 2008 WL 2795573 (W.D. Mich. Jul. 18, 2008); *Jarrett v. Bouchard*, No. 2:05-cv-
195, 2006 WL 2632460 (W.D. Mich. Sep. 13, 2006) (prisoner deprived of mattress for four days
after rolling mattress up and using it to strike at cell window).

medical problems as a result of his mattress restriction); *Pullum v. Herman*, No. 1:05-CV-365-TS, 2005 WL 2756729, at *2 (N.D. Ind. Oct. 25, 2005) (finding that sleeping on the floor, even though prisoner alleged back pain from doing so, did not deprive prisoner of the minimal civilized measure of life's necessities). Moreover, nothing in the complaint suggests that any of the named Defendants were aware that Plaintiff had fallen off the bench in the shower and hurt his back, and that his pain was exacerbated from sleeping without a mattress temporarily.

Likewise, while the "blasting" air conditioning was unpleasant to Plaintiff, he has not alleged facts from which the Court could infer a violation of his Eighth Amendment rights. Plaintiff does not allege that he suffered any deprivations of life's necessities, nor does he allege that he suffered any medical conditions, from the temperature. While Plaintiff alleges that he did not have a blanket, a temporary denial of a blanket simply fails to rise to the level of an Eighth Amendment violation. *See Grisson v. Davis*, 55 F. App'x 756, 757 (6th Cir. 2003) (seven-day deprivation of mattress, sheets, and blanket did not state an Eighth Amendment claim).

Plaintiff also contends that he was unable to sleep well in these conditions. The Court recognizes that "sleep undoubtedly counts as one of life's basic needs." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). Plaintiff's vague allegation, however, does not rise to the level of an Eighth Amendment violation. His complaint is devoid of facts from which the Court could infer that any of the named Defendants were aware of issues affecting Plaintiff's sleep and deliberately ignored them. Moreover, as discussed *supra*, Plaintiff's confinement in the shower and "freezer room," along with the denial of a mattress, which presumably contributed to the disruptions in sleep, were temporary, and "temporary inconveniences" do not suffice to state an Eighth Amendment conditions-of-confinement claim. *See Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017) (citing *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)).

20

Overall, while certainly unpleasant, Plaintiff fails to allege facts that his placement in the shower and "freezer room," and the conditions therein, were anything other than temporary inconveniences, and temporary inconveniences do not show that the conditions complained about fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis*, 257 F.3d at 511; *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal quotation marks omitted)). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims regarding these conditions.

### D.      Fourteenth Amendment Due Process Claims

#### 1.      Deprivation of Property

Plaintiff asserts that instead of conducting an inventory of Plaintiff's property, Defendant Olson stole it and gave it away to other inmates. Plaintiff's allegations implicate the protections of the Due Process Clause of the Fourteenth Amendment. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis (Bazzetta II)*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Plaintiff's due process claim regarding the deprivation of his property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474

U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not met his burden in this case. He has not alleged that state post-deprivation remedies are inadequate. Moreover, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim regarding the theft of property by Defendant Olson will be dismissed.

### 2.    Misconduct Proceedings

According to the allegations in Plaintiff's complaint and the exhibits thereto, Plaintiff alleges that he received a false Class I misconduct ticket for threatening behavior from Defendant Allen and corroborated by Defendants Olson, Carter, Garrod, and Hardenburg, and a false Class I

22

misconduct ticket (elevated from a Class II misconduct) for disobeying a direct order. (ECF No. 1-1.) Plaintiff appears to allege a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

As an initial matter, Plaintiff does not allege that his misconduct convictions have any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed in 2014 for crimes committed during 2009. See MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=258602 (last visited Oct. 18, 2022). For a prisoner like Plaintiff, who is serving a sentence for an offense committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Therefore, even the most severe of the misconduct convictions had no impact on the duration of Plaintiff's sentence.

Moreover, Plaintiff's misconduct convictions did not result in significant and atypical hardships. To the extent Plaintiff was placed in segregation pending his misconduct hearings, confinement in administrative segregation "is the sort of confinement that inmates should

reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

While Plaintiff may have been housed in segregation pending his misconduct hearings, it does not appear that he was sanctioned to detention in segregation following his misconduct

convictions. Rather, Plaintiff received 30 days' LOP for the disobeying a direct order misconduct, and 10 days' toplock[3] and 20 days' LOP for the threatening behavior misconduct. (ECF No. 1-1.) A few days on toplock, however, does not amount to an atypical or significant hardship. *See Graham v. Chicowski*, No. 18-2049, 2019 WL 4381841 (6th Cir. May 3, 2019); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Percival v. Stuhler*, No. 16-0083, 2016 WL 4536330, at *5 (W.D. Mich. Aug. 31, 2016). Moreover, pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. Apr. 18, 2022). Where a stay of that duration in segregation is not considered an atypical or significant hardship, it defies logic to suggest that the lesser penalties of "loss of privileges" and toplock for that duration could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a fourteen-day loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Miles v. Helinski*, No. 20-1279, 2021 WL 1238562, at *4 (6th Cir. Jan. 29, 2021) (five days' toplock and five days' loss of privileges fails to state a due process claim); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) ("thirty days' loss of privileges—did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3

---

[3] "Toplock" is a restriction of the prisoner to his own cell, room or bunk and bunk area. MDOC Directive 03.03.105, ¶ MMM-OOO (eff. Apr. 18, 2022).

(6th Cir. Jan. 24, 2017) (thirty days' toplock and thirty day's loss of privileges "does not amount to an 'atypical and significant hardship'").

Plaintiff fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest as a result of the allegedly false misconduct tickets. Plaintiff's Fourteenth Amendment due process claims premised upon such will, therefore, be dismissed.

### E. Civil Conspiracy Claim

Plaintiff also contends that Defendants conspired to violate his constitutional rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff provides no allegations regarding any agreement among Defendants, beyond the fact that they all work at DRF. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state

a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege an agreement among Defendants to violate his constitutional rights, Plaintiff fails to state a plausible claim of conspiracy.

## F.    Violations of MDOC Policy

Throughout his complaint, Plaintiff suggests that Defendants violated MDOC policy in various ways. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegations that Defendants violated MDOC policy and procedure, therefore, fail to raise cognizable federal constitutional claims.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Olson, Carter, Garrod, Hardenburg, Rewerts, Nemi, Blair, Nemiec,

and Fleisher will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Allen: (1) Plaintiff's Eighth Amendment conditions of confinement claims; (2) Plaintiff's Fourteenth Amendment due process claims; (3) Plaintiff's civil conspiracy claim; and (4) Plaintiff's claims concerning violations of MDOC policy. Plaintiff's First Amendment retaliation claims against Defendant Allen remain in the case.

An order consistent with this opinion will be entered.

Dated: October 19, 2022                            /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   CHIEF UNITED STATES DISTRICT JUDGE